# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

### v.

### Sean M. TARDIF

### Food Service Specialist Third Class, U.S. Coast Guard

### CGCMG 1063

### Docket No. 1141

### 26 March 2001

General Court-Martial convened by Commander, Eighth Coast Guard District. Tried at Clear Lake, Texas on October 25, 1999.

| | |
|---|---|
| Military Judge: | CAPT Robert Bruce, USCG |
| Trial Counsel: | LCDR Thomas Marian, USCG |
| Assistant Trial Counsel: | LTJG Michele A. Woodruff, USCGR |
| Detailed Defense Counsel | LT Andrew House, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | CDR Chris P. Reilly, USCG |

**BEFORE**
**PANEL SIX**
**BAUM, WESTON & CASSELS**
Appellate Military Judges

Per Curiam:

Appellant was tried by a general court-martial, officer and enlisted members. Despite his pleas of not guilty, he was found guilty of one specification of a twelve-day unauthorized absence and two specifications of assaulting a child under 16 years of age in violation of Articles 86 and 128, of the Uniform Code of Military Justice (UCMJ), respectively. The court sentenced Appellant to confinement for 3 years, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority reduced the confinement to two years, but otherwise approved the sentence as adjudged.

Before this Court, Appellant has assigned eight errors.[1] Four of those assignments

---

[1] (1) that the Staff Judge Advocate's recommendation materially misstates the maximum punishment to which Appellant could have been sentenced and the record does not establish that defense counsel was provided with a copy of that recommendation.

were orally argued, and, from those four, the following issues will be addressed: (1) whether the unauthorized absence offense must be set aside, and (2) whether Appellant has been prejudiced by excessive delay in the convening authority's action on the record and his forwarding that record for appellate review. The remaining assignments do not warrant discussion and are rejected.

## BACKGROUND

On 27 September 1998, Appellant was transferred from USCGC PAPAW (WLB 308) to Coast Guard Group Galveston for discharge on 1 October 1998 due to expiration of his enlistment. Appellant was not discharged as scheduled, however. Instead, according to testimony in the record, he was administratively extended after the Coast Guard learned that Appellant's two-month-old daughter had suffered a broken femur on 28 September 1998 under suspicious circumstances. Sometime after that, Appellant's supervisor, who was the Chief Master-At-Arms at Group Galveston, spoke to Appellant about a warrant that state authorities had issued for his arrest. The Chief testified that:

> I advised Petty Officer Tardif that, as there was a warrant for his arrest, he
> needed to go and turn himself in at the police department, so they didn't
> come hunting him.

R. at 542. Appellant did just that on 5 October 1998, and was jailed by civilian authorities from 5 October until 17 October 1998. Once released, he returned to the Coast Guard and this twelve-day absence forms the basis for his Article 86, UCMJ conviction. The record of trial does not reflect the charge against Appellant upon his arrest, but the Article 32, UCMJ, investigative report indicates that Appellant was arrested on a charge of injuring his two-month old daughter by breaking her leg, which was essentially the same offense alleged in one of the charges referred to his court-martial. Nothing in the record indicates disposition by the civilian authorities of the charge prompting his arrest.

A year later, on 25 October 1999, Appellant was brought to trial by general court-martial on the unauthorized absence charge and six specifications of assault consummated by batteries on his two young daughters. Two of those specifications alleged intentional

---

(2) that Appellant was prejudiced by the convening authority's excessive delay in taking action and forwarding the record for appellate review.

(3) that the convening order is ambiguous as to whether the convening authority intended to convene a general or special court-martial.

(4) that there is no evidence the convening authority considered clemency materials submitted by Appellant.

(5) that the record is not verbatim in that a ruling regarding defense requested instructions cannot be found.

(6) that the military judge erred by not sua sponte instructing the members on the affirmative defense of accident.

(7) that the conviction for unauthorized absence must be set aside because Appellant submitted to civil authority at the direction of his supervisor.

(8) that the judge erred in instructing the members that the defense of impossibility to unauthorized absence did not exist if the members found that Appellant committed the act for which he was confined by civil authorities where there was no evidence in the record that Appellant was confined for that reason.

infliction of grievous bodily harm, to wit: fractured ribs in one specification and a broken thigh in the other. Appellant received a complete acquittal of four of the assault specifications, one of which was the fractured-ribs offense. As for the other grievous-bodily-harm specification, he was found not guilty of intentionally inflicting a broken thigh, but guilty of a lesser assault offense of squeezing his daughter's leg. This left Appellant with guilty findings for that offense, a second assault by squeezing his other daughter's legs and buttocks, and the unauthorized absence. Over twelve months later, on 17 November 2000, the record of trial was referred to this Court for review.

## The Unauthorized Absence Offense

Appellant contends that the finding of guilty of unauthorized absence should be set aside and dismissed for two reasons: (1) because Appellant submitted to civil authorities pursuant to his supervisor's direction, and (2) because the judge erroneously instructed the court with respect to the defense of impossibility. The latter assertion is based on the discussion in Manual for Courts-Martial, Pt. IV, ¶ 10.c.(5)(1998)[2], which was in effect on the date of trial and states, "If a member is released by civilian authorities without trial, and was on authorized leave at the time of arrest or detention, the member may be found guilty of unauthorized absence only if it is proved that the member actually committed the offense for which detained, thus establishing that the absence was the result of the member's own misconduct."

The judge instructed the court that if arrest and incarceration made it impossible for the accused to return to his unit, the absence would be excusable if the arrest and incarceration were not the result of his own willful misconduct. Further, that it is the result of his own misconduct if he committed the underlying conduct for which he was arrested and incarcerated, that is breaking his daughter's femur. Appellant contends that no evidence was adduced at trial as to why he was held in civilian confinement. Therefore, it is his position that the military judge erroneously instructed the court members by stating what he considered was the underlying conduct for the arrest and incarceration. The Government asserts otherwise, contending that there was enough information in the record for the members to conclude that the warrant for Appellant's arrest was for assault of his daughter resulting in a broken femur, and that the military judge correctly instructed the members in this regard on the defense of impossibility.

We need not resolve this particular issue because we are convinced beyond a reasonable doubt that the actions of the Chief Master-at Arms preclude our affirming a finding of guilty of unauthorized absence. The Chief testified that, while he did tell Appellant that he needed to go and turn himself in, he did not order Appellant to do so, rather that he "strictly advised that it would be in his best interest." R. at 543. We find that this so-called advice from the Chief Master at Arms, to an E-4, was tantamount to an order and properly could have been considered as such by Appellant. We find that by his action the Chief authorized Appellant to be absent for that purpose. Under the terms of *United States v. Northrup*, 12 USCMA 487, 31 CMR 73 (1961), Appellant cannot be held guilty of absence without leave for a period spent in the hands of civil authorities when his

---

[2] This provision remains unchanged in the 2000 edition of the Manual for Courts-Martial.

appearance was with the authority of his superior.  Accordingly, we will set aside the finding of guilty and dismiss the unauthorized absence offense.

### Post-Trial Delay By The Convening Authority

Appellant argues that he has been prejudiced by excessive delay in the post trial processing of this case.  Specifically, he points to each segment of time that contributed to the ultimate delay of more than twelve months from trial to referral of the record to this Court, and submits that periods of dilatory inaction while an accused languishes in confinement should not be tolerated.  Quoting from *United States v. Shely*, 16 M.J. 431, 432, 433 (1983), Appellant says the Court " should be vigilant in finding prejudice whenever lengthy post-trial delay in review by a convening authority is involved," and that post-trial processing delay "will not be tolerated if there is *any* indication that appellant was prejudiced as a result."  The government concedes that the convening authority could have been more expeditious in processing and forwarding this case for review by this Court, but denies that Appellant was prejudiced by any delay.

 Staff judge advocates and convening authorities have an obligation to act diligently in the performance of their military justice duties.  Their delay in this case during the period following 9 June 2000, when the convening authority took his action on the record, until 2 October, when that record was finally forwarded for review by this Court is both unexplained and unreasonable.  Such delay in the processing of a case casts a shadow of unfairness over our military justice system.

Having said that, however, we must note that the Court of Appeals for the Armed Forces has repeatedly determined that an appellant must show that the delay, no matter how extensive or unreasonable, prejudiced his substantial rights.  *United States v. Banks*, 7 M.J. 92 (1979); *United States v. Jenkins*, 38 M.J. 287 (1993); and *United States v. Hudson*, 46 M.J. 226 (1997).  Although the test for prejudice is admittedly low, the Appellant must still show that the delay was prejudicial in and of itself.

Recently, however, a panel of the Army Court of Criminal Appeals decided, in a case it found to have excessive delay, that a finding of actual prejudice from that delay was not necessary in order for it to grant relief.  *United States v. Collazo*, 53 M.J. 721 (Army Ct.Crim.App. 2000).  Quoting from *United States v. Wheelus*, 49 M.J. 283, 288 (1998) that Court exercised its Congressionally granted "broad power to moot claims of prejudice" by affirming under Article 66(c), UCMJ, only such amount of the sentence as it determined, on the basis of the entire record, should be approved.  In so doing, it reduced the confinement by four months.

Notwithstanding the view of the Army Court, and despite our broad power to do justice, as articulated in *United States v. Claxton*, 32 M. J. 159, 162 (1991), we are to be guided by the opinions of the Court of Appeals for the Armed Forces on this subject.  Applying the standard that Court has set forth, we find that prejudice directly attributable to the delay in this case has not been established, and thus no relief is warranted.  We contrast this case with the case of *Collazo v. Welling*, 34 M.J. 793 (CGCMR 1992), in

which this Court determined that an unreasonable delay in the preparation of the record of trial and the convening authority's refusal to act on a petition for clemency without that record constituted prejudice and warranted appellate relief. In such a case, it is the delay itself which causes the prejudice to the accused. However, we note, as did the Army Court in *United States v. Collazo*, supra, that, if the problem of convening authority delay persists, there may be reason for return to a draconian rule, like the one under *Dunlop v. Convening Authority*, 23 USCMA 135, 48 CMR 751 (1974), where charges and specifications were dismissed for delay in excess of 90 days from trial to convening authority's action, if an accused was in continuous confinement during that time.

## Conclusion

Given our determination with respect to the unauthorized absence offense, the findings of guilty as to Charge I and its sole specification are set aside, and the charge and specification are dismissed. The remaining findings of guilty are affirmed. We have reassessed the sentence in light of the reduced findings of guilty. Upon reassessment, we are convinced that, if the trial court had been confronted at sentencing with only the two findings of guilty that we have affirmed, it would not have adjudged a sentence less than the one before this Court. Moreover, on the basis of the entire record, we have determined that this sentence should be approved. Accordingly, the sentence approved below is affirmed.

BAUM, Chief Judge, (concurring in part and dissenting in part):

I concur with all but the decision to provide no relief for the excessive delay in forwarding this record for review by this Court. On 9 June 2000, the convening authority took action on the record, but it was not forwarded for our review for 115 days, according to a transmittal letter signed by the staff judge advocate on 2 October 2000. My brothers in the majority opinion properly characterize this delay as unexplained and unreasonable. In addition, I find this 115 delay inexcusable for an Appellant who is confined. My colleagues, discerning no prejudice directly attributable to delay, have affirmed the sentence. I, on the other hand, would follow the lead of *United States v. Collazo*, 53 M.J. 721 (Army Ct.Crim.App. 2000), and reduce the confinement to 21 months. Upon reassessment of the sentence, I would affirm the discharge and the reduction in paygrade, but, on the basis of the entire record, which includes the delay in forwarding it to this Court, I do not believe that more than 21 months confinement should be approved.



For the Court,

//s//
James P. Magner
Clerk of the Court